Wilson v. Williams.

entering on the premises with horses, &c., he stated a like *permission* granted to Miller as tenant of the adjoining premises: also that 'a *license* from necessity existed' for Miller to pass through the alley over the plaintiff's land to and from the stables in the rear; and that such license had been acquiesced in by those who occupied the plaintiff's close before him.

On the trial it appeared that a license to pass through the alley had been given, but was revoked before the trespass complained of. There were two actions brought against Miller. In one the plaintiff recovered $10, and in the other 6 cents. He applied to the court below to be allowed costs in both actions, on the ground that the title came in question; the motion was denied: and now he moves [580] for a *mandamus*.

---

WILSON *vs.* WILLIAMS.                                         [581]

*It seems* that as well in the case of a *certiorari* as of an *appeal,* the constable who has levied upon property by virtue of a justice's execution is bound, upon being served with a certificate of the issuing of a *certiorari,* forthwith to release the property.

Whether he is bound to release property held by him under an *attachment,* on being served with such certificate, *quere.*

A plaintiff in replevin cannot *regularly declare* until the writ be returned with the names of the sureties annexed.

A *replevin bond* must be executed and delivered to the sheriff, or the proceedings will be irregular: it is no longer optional with the sheriff to dispense with a bond.

The Revised Statutes have changed the law in respect to the liability of the sheriff: he is no longer answerable for taking insufficient sureties, *unless* the defendant enter a formal exception to their sufficiency.

MOTION to set aside proceedings for *irregularity* in an *act of replevin.* Williams obtained two judgments against Wilson in a justice's court, one for $35 and the other for $40, in suits commenced by *attachments* under the act to abolish imprisonment, &c., by virtue of which, property belonging to Wilson was seized. On the return day of the attachments, the defendant appeared before the justice and made some technical objections, which being overruled, he declined appearing to the action, and judgments were entered without any issue being joined. On the day succeeding the rendition of the judgments, Wilson sued out a *certiorari* in each case, and obtained a certificate from the justice of the issuing thereof, which was served upon Williams and upon the constable who levied upon the property under the attachments, and the property demanded. Williams refusing to surrender it, a writ of replevin was sued out by Wilson, under which the prop-

Wilson *v.* Williams.

erty was taken. The writ of replevin was returned and filed in the clerk's office, but the sheriff omitted to annex to his return *the names of the sureties* in the bond delivered to him with the writ of replevin. Williams retained an attorney to defend, who entered an exception to the sufficiency of the sureties in the [582] clerk's office, and served notice of exception on Wilson's attorney ; but ascertaining that the names of the sureties had not been returned, did not serve notice of exception upon the sheriff. Wilson's attorney filed a declaration in the replevin suit, entered the usual rule to plead, and served a copy of the declaration and notice of the rule to plead on the attorney of Williams, who now moves to set aside the proceedings of the plaintiff in replevin.

*By the Court,* NELSON, Ch. J. A justice of the peace has jurisdiction in the case of an attachment, *under the Revised Statutes,* to the amount of $100, (2 *R. S.* 225, § 2, *sub.* 4;) and *under the act to abolish imprisonment,* &c., to the amount of $50. (*Statutes, session of* 1831, *p.* 404, § 34.) Where no issue has been joined, though the judgment exceed $25, the remedy to correct any errors of the justice is by *certiorari* to the common pleas. (2 *R. S.* 255, § 170.) Where an issue has been joined before the justice, and the judgment exceeds $25, the remedy is by appeal to that court. (2 *R. S.* 258, § 186.) The party applying for a *certiorari* must give a bond, with one or more sufficient sureties, &c., in the penalty of $50, conditioned to pay the judgment below and costs in the court above. (*Id.* 256, § 173.) The penalty of the bond in the case of an appeal is $100. (*Id.* 259, §189.) If a *certiorari bond* and *affidavit* are served on the justice before *execution* shall have issued, it stays the issuing thereof ; and if it shall have been issued, but not collected, a certificate of the issuing of the certiorari must be given by the justice, if required of him, which, when served on the constable, suspends the execution. (2 *R. S.* 256, § 176.) An *appeal* stays all further proceedings on the judgment before the justice ; if execution is already issued, the certificate of the justice that an appeal has been duly entered requires the constable *forthwith to release the goods and chattels ;* and if imprisoned, the party is entitled to be discharged from imprisonment. (2 *R. S.* 259, § 192, 193.) The statute, it will be perceived, is explicit that the goods shall be released to the party from execution in the case of an *appeal.* It is not so explicit in its direction in [583] the case of a *certiorari* being issued, but probably in legal effect it should be considered the same. But neither in the case of an *appeal* or *certiorari* does the statute make any provision for a release of the property, if held by virtue of *an attachment.* It seems be a *casus omissus,* and the question must turn upon construction by the court. It is not, however, material that we should look into that question upon this motion, because it will more properly come up on a *case* or *bill of exceptions,* as it goes to the merits of the action. If the attachment still held the property after the certiorari, there was no unlawful detention. There is another defect in the statute ; for though the judgment may be $50 or $100 on attachment, the penalty of the bond on certiorari is only $50, to cover both damages and costs.

It is apparent that the *names of the sureties* were not annexed to the writ and affidavit and returned to the clerk's office. Neither the affidavit of the deputy sheriff or the plaintiff's attorney alleges the fact, though charged otherwise in the affidavit of the attorney for the defendant. The bond itself was not returned, as supposed by the counsel ; nor is it necessary that it should be. There is no statute requiring it. It is given to the sheriff, and he may retain it himself. The defendant, therefore, was deprived of the means of ascertaining the ability of the sureties, and excepting if insufficient, under § 28, 2 *R. S.* 527. I do not say that this irregularity of the sheriff should operate to avoid the writ, but it should avoid all subsequent steps taken by the attorney for the plaintiff. It was his duty to have seen that the writ was regularly returned before service of declaration, or any other proceeding on his part. The statute requires that the *exception* by the defendant shall be made within twenty days after the *return of*

Wilson v. Williams.

*the writ*, and that notice shall be given to the *sheriff* and to the *plaintiff*. Now, the *return of the writ* means the return of it according to the statute, which requires the affidavit and names of the persons who were sureties in the bond, with their additions, occupations, and places of residence, to be annexed to it, and which are to be deemed for this purpose, an essential part of it. (2 *R. S.* 525, § 20.) The serving of the declaration, therefore, must be set aside with costs. The sheriff has leave to annex to the writ on file the names of the sureties, &c., [584] according to the statute, and the attorney for the defendant shall have twenty days to except after receiving notice of the sureties from the plaintiff's attorney.

I am of opinion that the bond under the 7th § is essential to the regularity of the writ—as much so as an affidavit. This process has been set aside for a defect in the latter, as irregular: The language of the section is very explicit: " Such writ *shall not be executed* in any case, unless the following provisions are complied with," &c. ; and again, § 8 : " On the receipt of the *writ* and of the *affidavit* and *bond* above required, the sheriff shall forthwith proceed to execute the writ," &c. Under the old statute, (1 *R. L.* 92, § 4, 8,) whether a bond was taken or not—and when taken, if the sureties were insufficient or not—the proceedings upon the replevin were regular, and the only consequence was the liability of the sheriff to the defendant for the damages sustained by reason of such omission or defect. On this subject there was no difference in respect to the proceedings, whether the *security* was taken or should have been taken under the statute of *Westminster* 2, or 11 *Geo.* 2, of which the fourth and eighth sections of our act are copies. Under the statute of *Westm.* 2, from which § 4 was taken, the practice of the sheriff was to take a bond from the pledges or sureties. (1 *Ld. Raym.* 278. 2 *H. Black.* 549, *n. c.*) The sum in which the bond should be taken was not defined. To make this security more effectual, the 11 *George* 2, fixed the responsibility, and made the bond assignable. The effect of the two bonds is the same; and in practice, but one was taken under either statute. (*McFarland* v. *McNitt,* 10 *Wendell,* 329, *and cases there cited.* 2 *H. Black.* 249, *note c.*) In England, the court will not grant an attachment against a sheriff for not taking a replevin bond even under the 11 *Geo.* 2, nor stay the suit. ( *Willes* 375, 7. 2 *T. R.* 617.) The sheriff is himself responsible to the party injured for the insufficient security under either statute in England, or under either section of our former statute. (2 *H. Black.* 36, 547. 4 *T. R.* 433. 1 *Saund.* 195, *n.* 3. *f.* *Wilkinson on Repl.* 122.) Even after an assign- [585] ment of the bond and suit, an action may be brought against him. (1 *Saund.* 195, *n.* 3. *f.*)

It was under this view of the law and of the liability of the sheriff, no doubt, that led to the remark by the chief justice in *Kelser* v. *Haynes,* (6 *Wendell,* 547,) that if he omitted to take sufficient surety in replevin, he would be responsible, but the proceedings would not be irregular: without adverting at the time to the change in the proceedings under the Revised Statutes. By these statutes, the bond must now be taken in all cases of replevin; and we have before remarked upon the peculiar language and provisions of the act, showing that the suit cannot regularly be commenced without it.

The defendant now being at liberty to except to the sureties, and special care taken that he shall be enabled to do so, we think that this officer is no longer responsible as before. As the defendant now has the control of the matter, there would seem to be no longer any necessity or propriety in making the sheriff amenable to him. Indeed, § 32 and 33, 2 *R. S.* 527, are conclusive upon the point. If no exception shall have been entered to the sureties in the bond, &c., *the sheriff shall be discharged from all liability for the sufficiency of such sureties,* (§ 32.) If such exception shall have been made, and judgment of discontinuance shall be rendered against the plaintiff for his sureties not justifying, (§ 30,) the sheriff shall be liable to the defendant for the sufficiency of such sureties as now provided by law, (§ 32.)