## WINTER *vs.* KINNEY.

The policy of the law in declaring void bonds, agreements, &c. taken by sheriffs and other officers *colore officii* not in conformity with statute, is to guard against official oppression on the one side, and a lax performance of duty to the injury of the plaintiff in the process on the other.

An agreement made with a sheriff by which a party under arrest is permitted to go at large upon any terms other than those prescribed by statute is void. And so is any agreement taken from a party in custody intended as an indemnity to the sheriff for a breach of duty.

But the prohibition extends only to the officer, and not to the plaintiff in the process. Therefore, where a party under arrest was permitted to go at large, upon depositing with a third person the sum of money for which he was arrested, under an agreement, that if he did not surrender himself at a given time, the money might be paid over to the plaintiff in the process; *held,* in an action to recover back the money from the person with whom it was deposited, that the question was, whether the agreement was made with the officer, or with the plaintiff at whose suit the arrest was made; and upon the evidence, that question directed to be submitted to the jury.

ON error from the supreme court. Kinney brought assumpsit against Andrew Winter in the supreme court, and declared for money had and received to his use. The defendant pleaded the general issue, and the cause was tried at the New-York circuit, before EDMONDS, circuit judge, in May, 1845. It appeared on the trial, that the plaintiff, who was a contractor on the New-York and Erie rail-road near the line of New-Jersey, was arrested in the fall of 1840, by John A. Winter, a deputy

of the sheriff of the county of Bergen in New-Jersey, at the suit of one Wanmaker. The arrest took place on a Saturday evening, between the hours of seven and ten o'clock, within the state of New-Jersey. The plaintiff, on being arrested, agreed with the defendant, that if he would become his bail until Monday morning, he would deposit with him $340, that being the amount for which he was required to give bail; and in case he failed to surrender himself to the deputy on Monday morning, or settle with Wanmaker, then that the defendant should pay the money over to Wanmaker. Under this agreement the plaintiff deposited with the defendant $340, being the money for which this suit was brought. Before daylight on Monday morning the plaintiff offered to surrender himself and demanded the money; but the defendant and the deputy refused to accept the surrender at that time, alleging that he was not to surrender himself until after daylight. The evidence was conflicting as to the hour on Monday morning when the surrender was to be made, and it did not appear that the plaintiff made any other offer to surrender himself. The defendant paid the money over to Wanmaker on being indemnified. One of the witnesses testified that *Wanmaker was present a part of the time when the agreement was made, and that the plaintiff and Wanmaker on the same occasion conversed respecting Wanmaker's claim.* Another witness testified that one of the persons present began to draw a bail bond; that the plaintiff remarked it was not worth while to be at the trouble and expense of drawing it, because he would see Wanmaker on Monday morning, and would arrange the matter with him, and there would be the end of it; *that it was all understood between them.*

The circuit judge ruled that the agreement under which the $340 was deposited was void; that there were no questions of fact for the jury to pass upon, and that the plaintiff was entitled to recover. The defendant excepted. Verdict for the plaintiff. A motion for a new trial was denied by the supreme court, and judgment rendered for the plaintiff.

Winter *v.* Kinney.

*G. R. J. Bowdoin,* for plaintiff in error.

*Wm. Curtis Noyes,* for defendant in error.

WRIGHT, J. An agreement made with a sheriff, or other public officer, to obtain an indulgence not authorized by law to a party under arrest, or in contemplation of the escape of such party ; or the taking, by such officer, from a party in custody, an obligation or security not sanctioned by statute, for the ease and favor of the prisoner, and as an indemnity for a breach of duty on the part of such officer ; has uniformly been held void under the statute of 23 Henry 6, chapter 9, in England, in this state, and in other states of the Union in which that statute has been in substance re-enacted ; at least, when such agreements or securities have been prosecuted by the officer himself, or in the name of others for his benefit, or where the attempt has been made to set up or enforce them for his relief or protection. (1 *T. R.* 418 ; 7 *id.* 109 ; 7 *John. R.* 159 ; *id.* 436 ; 8 *id.* 76 ; 5 *Wend.* 61 ; 19 *id.* 188 ; 1 *Southard,* 319 ; 2 *id.* 811.) At common law, undoubtedly, independent of the statute, if the agreement made or security taken *colore officii* contemplate an indemnity for the fraudulent escape of the party arrested, or for any act inconsistent with the duty of the officer, whereby either official oppression, or injury to the plaintiff in the suit may result, such agreement or security is void. The statute of New-Jersey is substantially a re-enactment of that of 23 Henry 6. It provides that no sheriff, under sheriff, coroner, jailer, or other officer that may have a party in custody, " shall take or make, or cause to be taken or made, any obligation" for letting out of prison, or from arrest, by virtue of any writ, process or warrant, in any personal action, or by reason of any indictment for trespass, " or by color of his or their office, of any person, or by any person, by course of law, but only to themselves respectively, and by the name of their office, and upon condition written, that the said prisoner shall appear at the day and place mentioned and contained in the said writ, process or warrant." (*Elm. Dig.* 239 ; *Laws of N. J.* 1796.) The only mode in

which the officer can discharge from arrest, is that prescribed by statute; nor can he take any obligation or security from the party in custody, conditioned otherwise than for his appearance at the day and place mentioned in the process. Should he do so, the act being without authority, he would not be protected against the party at whose suit the arrest was made, and the agreement or security being without consideration, so far as the officer was concerned, could not be enforced by him. The effect, therefore, is to render such agreement or security in the hands of the officer, or when attempted to be enforced for his protection or benefit, utterly void. The policy of the law in declaring void agreements and securities not taken in conformity to the statute, when attempted to be set up and enforced by the officer, is to guard against official oppression on the one side, and a lax performance of duty, to the injury of the plaintiff in the process, on the other. I would not be understood as saying that a public officer may not, under any circumstances, take a security unless it be one authorized by statute law. There are a variety of securities taken by the officers referred to in the New-Jersey statute, valid at common law, but not embraced within any statutory enactment. But where a party is in custody, and the officer, instead of taking the obligation for his release specifically prescribed by statute, takes one at his own volition, more or less onerous to the prisoner, he asserts, by virtue of his office, an illegal claim of right or authority to take it. He takes it *colore officii*. " Color of office," says Tomlin, " is when an act is evilly done by the countenance of an officer; and is always taken in the worst sense, being grounded upon corruption, to which the office is a mere shadow or color."

But the statute is confined to public officers; and hence a distinction is to be observed between agreements made by officers *colore officii*, and those with the party at whose suit the arrest is made. The latter may make such agreement or take such security as he pleases, on discharging his debtor from arrest. In *Hall* v. *Carter*, (2 *Mod.* 304,) it was said, though a sheriff cannot take a bond in any other form than that prescri-

bed by statute, the party himself may; and this doctrine was affirmed in *Rogers* v. *Reeves*, (1 *T. R.* 422,) and *Fuller* v. *Prest*, (7 *T. R.* 109) The party may also agree or consent that the prisoner shall go at large on a deposit of money to discharge his debt, or dispensing with the bail bond, may accept his own, or the undertaking of another, that he will appear. But in these cases, the officer must not be a party in any way beneficially interested in the agreement or security.

There is but a single question in this case. If the agreement set up was made with the deputy sheriff, John A. Winter, through his brother Andrew, in contravention and evasion of the statute, it was void; and Kinney having parted with his money without consideration, it still belongs to him. On the other hand, if the contract was made with Wanmaker, the plaintiff in the writ, or with his assent and for his benefit, and the sheriff was no party to it, it was upon sufficient consideration, and legal.

The circuit judge decided that the defendant, Andrew Winter, had not sustained his defence, and that it ought not to be submitted to the jury; and he charged the jury " that there were no questions of fact for them to decide, and that the plaintiff was entitled to recover, because the agreement on which the money was deposited was without consideration and void;" thus withdrawing from their consideration the question whether the agreement had been made with Wanmaker, the creditor, or with the sheriff, and assuming to decide himself, from the evidence, that it was with the latter. In this I think he erred. Whether the agreement was void or not, depended upon the question of fact whether it had been made with the sheriff or with Wanmaker, the plaintiff in the writ. In this case, this was a question, with proper instructions as to the law, for the jury. There was some evidence, at least, favoring the idea that Wanmaker was a party to the agreement, or that it was made for his benefit, and by his authority and consent. He was present part of the time whilst Kinney was under arrest, and he conversed with Kinney respecting his claim. Kinney

spoke of seeing him on Monday morning, according to the terms of the agreement, with the view of arranging his debt, and remarked " that it was all understood between them." Wanmaker sent a message to Kinney to meet him for settlement on Monday morning, showing that he understood the agreement, and assented to it at the time it was made, or subsequently; and Wanmaker afterwards received the money that had been deposited. These facts, in connection with the other evidence in the case, may have failed to satisfy the jury that Wanmaker, and not the sheriff, was a party to the agreement, but they were not so weak and irrelevant as to justify the court in authoritatively withholding them from their consideration. It is peculiarly the province of the jury to reconcile conflicting testimony, and settle disputed questions of fact.

On a new trial, should the jury find that the agreement was made with the sheriff, or that he was a party in any way beneficially interested in it, it will not be necessary to pursue the further inquiry, whether it had been substantially complied with by Kinney, as it would be unauthorized and void; but should they find that it was made with Wanmaker, the creditor, then the question of performance by Kinney would necessarily arise.

At the trial the defendant offered to show the amount and consideration of the debt of Wanmaker against Kinney—that the same was a just debt for three hundred and fifty dollars, and had been so admitted by Kinney, and agreed to be paid by him. To which evidence, so offered, the plaintiff objected, stating that if he was permitted to go into such evidence, he was ready to show that he did not owe Wanmaker, or if any thing, but a small sum, not exceeding ten dollars. The circuit judge refused to allow or permit the defendant to give any evidence concerning the debt due from Kinney to Wanmaker. In this I think he was right. It was clearly an attempt to throw into the case an irrelevant and impertinent issue.

Upon the ground, therefore, that there was a question of fact in the case that should have been submitted to the considera-

tion of the jury, I am of the opinion that the judgment of the supreme court should be reversed, and a *venire de novo* awarded, costs to abide the event.

Judgment reversed.