## TAYLOR *v.* FLECKENSTEIN and another.

*(Circuit Court, D. Oregon. February 21, 1887.)*

**1. CONTRACT TO PAY THE DEBT OF ANOTHER—RELEASE OF DEBTOR FROM ARREST.**

B.. being under arrest in a civil action, the defendants, at his request, and without any demand from or communication with the officer having him in custody, executed a writing under seal for his discharge, in which they undertook, among other things, that, in case a judgment passed against B., and he failed to satisfy the same, they would; in consideration of which the plaintiff directed him to be discharged, which was done. Afterwards judgment was

given against B., which he failed to pay, being insolvent; whereupon the plaintiff brought this action on the undertaking for the amount of the judgment, and the jury, under the instruction of the court that, if the agreement to pay the judgment was knowingly and voluntarily entered into by the defendants, it was valid and binding, having found a verdict for the plaintiff, the defendants moved for a new trial for error in the instruction. *Held*, that the contract, not being prohibited by statute nor contrary to public policy, was valid. (*a*) The discharge of B. from arrest, without the delay allowed by statute for the justification of bail for his appearance, was a sufficient consideration therefor; and (*b*) the writing containing the agreement, being under seal, imported a sufficient consideration for the same until the contrary was shown.[1]

**2.** FRAUD—SIGNING A WRITING WITHOUT READING IT.

It is no defense to an action on a writing that the defendant was misled or misinformed as to the contents and effect of the same, unless it also appears that, by reason of some disability, he was incapable of reading and comprehending the writing for himself, or that he was imposed on by some fraudulent device, as the substitution of one writing for another.[1]

(*Syllabus by the Court.*)

Action to Recover Money.
*Frederick V. Holman*, for plaintiff.
*Rufus Mallory*, for defendants.

DEADY, J. This action is brought on a writing executed by the defendants, under seal, on September 2, 1883, for the discharge of Joseph Bachman from arrest in a civil action, brought by the plaintiff herein against said Bachman, in this court, to recover the sum of $1,000, with interest and costs, whereby they undertook and "obligated" themselves, not only that said Bachman would render himself amenable to the process of the court during the pendency of the action, and to such other process as might be issued to enforce any judgment given therein, but also that said Bachman would pay any such judgment, "in default of which we [the defendants] will pay to said plaintiff the sum of $1,050, with interest on $1,000 thereof from September 28, 1883, at 10 per centum per annum, and the costs and disbursements of this action."

It is alleged in the complaint that, upon the execution of this instrument, Bachman was discharged from arrest, and that on November 19, 1883, judgment was duly given in said action against said Bachman for the sum of $1,098.38; that on November 28th an execution issued

---

[1] The legal effect of an instrument cannot be avoided by showing that it was signed in ignorance of its contents, when the person who signed it did not read it, or, if unable to read, did not ask to have it read, in the absence of some fraud or deceit or misrepresentation having been practiced upon him. Keller v. Orr, (Ind.) 7 N. E. Rep. 195; Wallace v. Chicago, St. P., M. & O. R. Co., (Iowa,) 25 N. W. Rep. 772; McKinney v. Herrick, (Iowa,) 23 N. W. Rep. 767; Gulliher v. Chicago, R. I. & P. R. Co., (Iowa,) 13 N. W. Rep. 429; Burroughs v. Pacific Guano Co., (Ala.) 1 South. Rep. 212.

Such an instrument is void when the signature thereto is obtained by misreading it to a person who is unable to read, Bowers v. Thomas, (Wis.) 22 N. W. Rep. 710; First Nat. Bank v. Deal, (Mich.) 22 N. W. Rep. 53; or by any trick or device whereby the signer is induced to believe that he is signing a different paper, McGinn v. Tobey, (Mich.) 28 N. W. Rep. 818; and it has been held to be void if the signature is obtained by a mere misrepresentation as to its contents. Burroughs v. Pacific Guano Co., (Ala.) 1 South. Rep. 212.

But negotiable paper in the hands of a *bona fide* holder is valid, though the signature thereto was obtained by such means, if the maker is chargeable with negligence. Soper v. Peck, (Mich.) 17 N. W. Rep. 57; Fayette Co. Sav. Bank v. Steffes, (Iowa,) 6 N. W. Rep. 267.

thereon, which was returned *nulla bona*, and that said Bachman is and has been ever since the date of said judgment insolvent; and that the defendants, though often requested, have not paid said judgment according to the tenor and effect of their undertaking, and to do so still refuse.

In their answer the defendants admit the execution of the instrument for the purpose of procuring the discharge of said Bachman from arrest, but deny that they executed the same to secure the payment of the plaintiff's demand in the action; and aver that the plaintiff caused said instrument to be prepared, and "exacted" of the defendants the execution of the same, contrary to law, as a condition for said discharge; that the defendants executed the same without reading or hearing it read, and without any other knowledge of its contents than was derived from the representations of the plaintiff's attorney in whose office the instrument was executed; that said attorney falsely represented to the defendants that said instrument contained no condition or stipulation other than those required by section 109 of the Code of Civil Procedure to procure the discharge of a party from arrest in a civil action, and that, relying on such representations, they executed the same; and that said instrument was "extorted" from the defendants by the plaintiff, and the marshal in whose custody said Bachman then was, contrary to said section 109.

The new matter in the answer is controverted by the replication. It is also alleged therein that the instrument, and every part thereof, was truly read to the defendants by the plaintiff's attorney before the execution of the same, and that they thereupon voluntarily executed the same, with full knowledge of its contents and effect.

On December 23, 1886, the cause was tried with a jury, who gave a verdict for the plaintiff in the sum of $1,309.64, on which judgment was given accordingly.

On the trial, the defendants contended that the instrument was void for the following reasons, and prayed instructions to the jury to that effect: (1) The undertaking of the defendants to pay any judgment that might be given against Bachman, in case of his failure to do so, is contrary to law and public policy, and therefore void. (2) The instrument was extorted from the defendants by the marshal *colore officii*, and is therefore void. They also asked the court to instruct the jury that, if they believed from the evidence that the defendants were induced to sign the writing in question by the false representations of the plaintiff's attorney as to its contents and effect, their verdict should be for the defendants. The court instructed the jury, in effect, that, if the defendants knowingly and voluntarily executed the instrument, they were bound by the undertaking therein to pay the judgment against Bachman, and their verdict in such case must be for the plaintiff; but otherwise not. The defendants now move for a new trial on the ground of an error in the instruction to the jury.

On the argument counsel attempts, notwithstanding the verdict, to maintain that the undertaking of the defendants was, in contemplation

of law, extorted or exacted from them by the marshal *colore officii*. The verdict of the jury establishes the fact, for all it is worth, that the defendants executed the instrument voluntarily, and there is even no evidence to the contrary. The marshal does not appear to have had communication with the defendants, and had nothing to do with the transaction, except to take Bachman to the office of the plaintiff's attorneys, who had been and were his friends, and to accept the undertaking, and discharge the prisoner on the direction of said attorneys. The defendants, one of whom is the brother-in-law of Bachman, came to the office of these attorneys, so far as appears, at Bachman's request, to be sureties for his discharge from arrest, and the business was transacted in a room in which the marshal was not present. It also establishes the fact that the defendants executed the instrument knowingly; that is, with knowledge of its contents, and the liability they thereby assumed. On this question the evidence was conflicting, but, in my judgment, the verdict was according to the weight of it. It consisted of the testimony of the defendants and the deposition of Bachman, now resident in New York, to the effect that the attorney for the plaintiff told them, before signing the instrument, that it was merely an undertaking for latter's appearance. The attorney, Mr. Henry Ach, testified directly to the contrary, and positively affirmed that he read the whole instrument to the defendants, and, particularly, the clause concerning the payment of the judgment; which he said he had inserted in the instrument by direction of the senior partner of the firm, Mr. Marcus W. Fechheimer, because, as the latter then said, Bachman had been to see him, and promised to give him security for the debt as well as his appearance. Mr. George H. Thurston, the notary public before whom the defendants qualified as bail, was present when the instrument was signed. He also testified that it was read to the defendants; that his attention was attracted to the clause concerning the payment of the judgment as something unusual, on which account he asked them, before administering the oath to them, "If they understood the bond," to which they answered in the affirmative. On this evidence the question was submitted to the jury, and they found that the defendants executed the instrument knowingly. The point was not then made that this defense, if true, was immaterial.

In *Hazard* v. *Griswold*, 21 Fed. Rep. 178, (a very similar case,) the defendant, in an action on a bond given for the release of a person arrested on a *ne exeat*, in which he was surety, set up that he executed the bond on the misrepresentation of the plaintiff and others, his agents and attorneys, as to its contents and effect, without averring that he was blind or illiterate, or otherwise incapable of reading the instrument for himself, or that any fraudulent device had been resorted to for the purpose of deceiving him, such as the substitution of one instrument for another. On a demurrer to this plea, Mr. Justice GRAY, speaking for the court, said it was clearly insufficient. "A person capable of reading and understanding an instrument which he signs is bound in law to know the contents thereof, unless prevented by some fraudulent device, such as the fraudulent substitution of one instrument for another. This

plea does not aver any fact to excuse or justify the defendant in relying upon the representations alleged to have been made in behalf of the plaintiff."

Written instruments would often be not worth the paper on which they are written if the parties to them could escape their liability thereon, after having had the benefit thereof, on the plea that they did not understand the nature or extent of such liability, or that the same was erroneously or falsely represented to them, or read to them by the other party thereto. This case is a good illustration of the wisdom of the rule laid down in *Hazard* v. *Griswold.* One of the defendants is a man of education, and at the time of signing the instrument was a law student, and has since been admitted to the bar. The other is a well-known liquor dealer, and a man of business experience. Between them and the plaintiff or his attorney there was no relation of trust or confidence. They were capable of reading the instrument, and apprehending its contents, and the extent of the liability they assumed in signing it. And if there was any doubt on the last point, for which I see no room, and they desired advice on the subject, they should have sought it of some one who was under obligation to give it to them, and not the plaintiff's attorney. There was nothing in the circumstances to excuse the defendants from reading the instrument for themselves, and, if they signed it without doing so, they cannot now be heard to say that they misunderstood it, or were misled concerning it by the plaintiff's attorney. See, also, on this point, *Hawkins* v. *Hawkins*, 50 Cal. 558. To hold otherwise would practically dispense with the statute of frauds and perjuries. If a party to an agreement, which such statute declares invalid unless committed to writing, may, when called on to perform or stand to the same, avoid it by alleging that it was misrepresented to him, and that he did not understand it, without giving any sufficient reason for not reading it himself, the terms and effect of the agreement will at last rest on parol testimony, with strong temptation and great facilities for perjury,—the very mischief the statute was intended to prevent.

The validity of the contract, then, is the only question open for consideration on this motion. Assuming, as we must, that the contract to pay the judgment against Bachman in case he made default therein was executed by the defendants voluntarily and knowingly, it is valid if founded on sufficient consideration, and is not prohibited by statute, or contrary to public policy. There is no statute prohibiting such an agreement or undertaking, and it would be very strange if there was. Nor does it appear to be contrary to public policy, so far as appears from the legislative or judicial acts or declarations of the state. An agreement to answer for the debt or default of another is recognized as a lawful contract by the law of the state, provided it is in writing. Code Civil Proc. Or. § 775.

In *Paddock* v. *Hume*, 6 Or. 82, the supreme court of the state expressly held such a contract to be valid. The case was this: A non-resident, being arrested in a civil action, was released on the bond of a third per-

son, given to the plaintiff in the action, conditioned for the payment of any judgment which the latter might recover therein. The plaintiff recovered judgment, but prior thereto the obligor in the bond surrendered the party in the mode provided by statute for the surrender of a defendant by his bail. The judgment not being paid by the defendant therein, the plaintiff brought an action on the bond for the amount of the judgment, and stated these facts in his complaint, to which the defendant demurred. The court held the contract valid, saying that the instrument, being under seal, imported a consideration; and the same not being in contravention of public policy, or contrary to any statute, it was good as a common-law bond.

In *U. S.* v. *Hodson*, 10 Wall. 395, a distiller, although only required to give bond to comply with certain provisions of the act regulating the distillation of spirits, voluntarily gave one conditioned that he would comply with *all* the provisions of the act, or other acts on the subject then in force, or thereafter to be enacted. The court held the bond valid generally, saying (409) "there is neither injustice nor hardship in holding that the contract, as made, is the measure of the rights of the government, and of the liability of the obligors."

In *Paddock* v. *Hume, supra*, the point was made that it did not appear that there was any sufficient consideration for the agreement, but the court said that the instrument, being under seal, imported a consideration, and, if there was none in fact, the defense should have been made by answer. And the want of consideration is really the only point on which the validity of this agreement may be questioned.

The statute of Oregon, (section 775, Code Civil Proc.,) corresponding to section 4 of the English statute of frauds and perjuries, (29 Car. II. c. 3,) provides explicitly that the consideration for an agreement to answer for the debt or default of another shall be expressed in the writing containing the agreement. This is in accordance with the construction given by the English courts to their statute. *Wain* v. *Warlters*, 5 East, 10. As the consideration is an essential part of an agreement, it was held that the latter was not in writing unless the former was directly stated therein, or fairly to be implied therefrom. The courts of New York (*Sears* v. *Brink*, 3 Johns. 210) and other states followed the English ruling. Whart. Ev. § 869; 3 Kent, Comm. 121. And finally this ruling was incorporated into the Revised Statutes of New York, whence it found its way into the Code of that state, and thence into that of Oregon. In determining, then, what is a sufficient consideration, properly expressed, to support such an agreement, the decisions of the English and New York courts are peculiarly in point.

A mere promise to pay the already existing debt of another is a nude pact, and void for want of consideration. To constitute a valid agreement to pay the debt of another, there must be a consideration shown other than the existing liability of the debtor to his creditor. *Leonard* v. *Vredenburg*, 8 Johns. 29. But it is sufficient if the consideration can be fairly inferred or gathered from the whole writing, and the collateral facts and circumstances to which the agreement has reference may be

considered for this purpose. *Douglass* v. *Howland*, 24 Wend. 35. . Any act of the person to whom the promise is made, from which the promisor or another derives any benefit, or by which the promisee is inconvenienced, is a sufficient consideration for the agreement. Whart. Ev. § 869.

At the date of this agreement, Bachman, who appears to have been engaged in some kind of money business, had failed, and been arrested in an action to recover the debt due the plaintiff, and was necessarily suffering inconvenience and annoyance from that fact. As he could not have been arrested unless on some ground imputing moral turpitude to him, the mere fact of his arrest and its continuance for any length of time, however short, was damaging to his standing and reputation as a business man, and calculated to embarrass him in any arrangement he might desire to make with his creditors. By the ordinary process of giving bail for his appearance, he would have remained in custody at least 15 days from the date of the undertaking for his discharge, the time allowed by statute for giving notice to the plaintiff in the action of the fact of the undertaking, and for his serving notice of objection to the same if he desired. Code Civil Proc. Or. § 114. In this state of things his friends, the defendants, come forward, and not only become bound for his appearance and submission to the process of the court, but actually undertake to pay the debt judgment may be rendered for, if Bachman did not; and the latter, in consideration of this undertaking, and by the direction and consent of the plaintiff, is at once released from imprisonment. In my judgment, the benefit to Bachman, in being immediately released from custody, is a sufficient consideration for the defendants' agreement to answer for his default in not paying the judgment in question.

But the validity of this contract may also be maintained in this particular on another ground. This agreement is under seal, and from that fact a sufficient consideration for its execution is implied, even in this class of cases. *Douglass* v. *Howland*, 24 Wend. 45; Whart. Ev. § 869. The general rule is declared in the Code of Civil Procedure, § 743, as follows: "The seal affixed to a writing is primary evidence of a consideration." And whatever is implied or presumed by law of or concerning a writing is thereby sufficiently "expressed" in it. *Rogers* v. *Kneeland*, 10 Wend. 249. The case was not contested on this point, and the defense of a want of consideration is not set up in the answer. There is no direct testimony on this subject, and nothing appears in the circumstances of the case sufficient to overcome the presumption of a consideration for the execution of the instrument from the fact that the parties affixed their seals thereto.

The motion for new trial must be denied, and it is so ordered.